**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BARBARA A. BOGDAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-cv-2671 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| UFCW INTERNATIONAL UNION-INDUSTRY VARIABLE ANNUITY PENSION FUND, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Barbara Bogdan sustained a workplace injury on September 24, 2021. [Dkt. 63 (Plaintiff's Fed. R. Civ. P. 52(a) motion ("PM")) at 1 (¶ 1), 8 (¶ 1)[1]; Dkt. 67 (Defendant's Proposed Findings of Fact ("DFOF") at ¶ 17.)] She applied for a Disability Pension Application from the Defendant UFCW International Union-Industry Variable Annuity Pension Fund ("the Fund") on August 14, 2023. [PM at 3 (¶ 13), 6 (¶ 27); DFOF at ¶ 18.] In April 2024, the Fund denied Plaintiff's Disability Pension application, explaining that her medical records reflected that she was not eligible for a Disability Pension. [*Id.* ¶ 21.] The Fund did not timely resolve Plaintiff's appeal [PM at 4 (¶¶ 15-16); Dkt. 67 (Defendant's Proposed Conclusions of Law ("DCOL") at ¶ 5] and Plaintiff subsequently filed the instant lawsuit against the Fund under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001-1461. [DFOF at ¶ 25.]

Before the Court is Plaintiff's Motion for Findings of Fact and Conclusions of Law Pursuant to Federal Rule of Civil Procedure 52(a) [Dkt. 63]. Defendant Fund has also filed a cross

[1] Because Plaintiff has reused paragraph numbers (and occasionally uses letters) throughout the various sections of her motion, for clarity when citing to Plaintiff's motion, the Court cites first to the page number followed by the applicable paragraph number (or letter) in a parenthetical.

motion for judgment in its favor, Defendant's Motion for Judgment on the Administrative Record Pursuant to Federal Rule of Civil Procedure 52. [Dkt. 65]. For the reasons discussed below, Plaintiff's Motion for Findings of Fact and Conclusions of Law Pursuant to Federal Rule of Civil Procedure 52(a) [Dkt. 63] is DENIED; Defendant's Motion for Judgment on the Administrative Record Pursuant to Federal Rule of Civil Procedure 52. [Dkt. 65] is GRANTED.

## I. Standard of Review

Federal Rule of Civil Procedure 52 permits the Court to conduct a trial on the papers, weigh the evidence, make findings, and resolve factual disputes. *Daniliauskas v. Reliance Standard Life Ins.*, No. 16-cv-9278, 2018 WL 1336051, at *8 (N.D. Ill. Mar. 14, 2018). This procedure is well suited to ERISA cases involving review of a closed administrative record. *Fontaine v. Metro. Life Ins.*, 800 F.3d 883, 885 (7th Cir. 2015); *Snapper v. Unum Life Ins. Co. of Am.*, 662 F. Supp. 3d 804, 812 (N.D. Ill. 2023) (collecting cases).

"A plan participant's challenge to a denial of benefits brought pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), 'is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case a deferential standard of review is appropriate.'" *Krueger v. Reliance Standard Life Ins.*, 772 F. Supp. 3d 893, 902-03 (N.D. Ill. 2025) (citation omitted). Although the Plan does vest the Board of Trustees with "complete authority and discretion to make all benefit determinations, including the ability to interpret and apply the terms of the (Variable Annuity Pension Plan)" [*see* Dkt. 62-2 at 188], because the Fund did not timely resolve Plaintiff's appeal, the parties have agreed that the Court should review the denial of benefits de novo. [Dkt. 66 at 5-6.] *See Fessenden v. Reliance Standard Life Ins.*, 927 F.3d 998, 1004-05 (7th Cir. 2019).

In applying a de novo review, the Court is tasked with "making an independent decision about the employee's entitlement to benefits." *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007); *Dorris v. Unum Life Ins. Co. of Am.*, 949 F.3d 297, 304 (7th Cir. 2020). Plaintiff bears the burden of proving entitlement to benefits by a preponderance of the evidence. *Slaughter v. Hartford Life & Accident Ins.*, No. 22-cv-5787, 2024 WL 3251371, at *7 (N.D. Ill. July 1, 2024) ("Because Slaughter must prove his entitlement to benefits, the Court does not resolve any doubts or gaps in the evidence in his favor."); *Jones v. Unum Life Ins. Co. of Am.*, No. 24-cv-3911, 2026 WL 96985, at *2 (N.D. Ill. Jan. 13, 2026) ("'As the applicant seeking benefits,' plaintiff bears 'the burden of proving entitlement to those benefits, and any gaps in the record cut against [his] claim.'" (alteration in original) (citation omitted)). Any gaps in the recordcut against Plaintiff's claim, not the Fund's.

## II. Material Facts[2]

The Fund's International Union-Industry Variable Annuity Pension Plan (the "Plan") provides a Disability Pension for eligible participants whose covered employment terminates due to Total and Permanent Disability. [DFOF at ¶ 1.] Under the Plan, "[a] Participant who experiences a termination of Covered Employment on account of Total and Permanent Disability shall be eligible to receive a Disability Pension if the Participant has at least ten years of Pension Credit at the time Covered Employment Terminates." [*Id*. at ¶ 2.]

Under the Plan, a Participant is considered "Totally and Permanently Disabled" when, based on medical evidence, the Participant is "unable to engage in any substantial gainful activity by reason of any medically determinable, physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

[2] The Court has only cited material facts, not those facts which are not outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a "material fact" is one that "might affect the outcome of the suit").

than 12 months." [*Id*. at ¶ 3.] "Substantial Gainful Activity" is defined as activity that "involves performance of significant physical or mental duties, or a combination of both, that is productive in nature." [*Id*. at ¶ 4.] The Plan clarifies that, "[f]or work activity to be substantial, it is not necessary that it is performed on a full-time basis; work activity performed on a part-time basis also may be substantial." [*Id*. at ¶ 5.] Additionally, under the Plan, "[w]ork may still be substantial even if the amount of work activity is less or it is of a less responsible or gainful nature after the onset of your impairment than before." [*Id*. at ¶ 6.] The Plan provides that Participants will be considered "Totally and Permanently Disabled" if "your physical or mental impairment(s) is of such severity that you are unable to do your previous work and considering your age, education, and work experience, you cannot engage in any other kind of substantial gainful work." [*Id*. at ¶ 7.]

Plaintiff sustained a workplace injury on September 24, 2021, when she tripped over a box and fell, hitting her knees and elbows. [PM at 1 (¶ 1), 8 (¶ 1); DFOF at ¶ 17.] She underwent an examination and x-ray, after which a physician reported a "Displayed Fracture of Lateral Condyle of RT Femur, initial encounter for closed fracture S72.421A." [PM at 2 (¶ 3), 8 (¶ 3); DFOF at ¶ 29.] Plaintiff was put in a full-length leg cast and wheelchair. [DFOF at ¶ 30.]

Plaintiff's case was assigned to Dr. Anil Thomas, an orthopedic surgeon and knee specialist. [PM at 2 (¶ 5), 5 (¶ 16), 9 (¶ 5); DFOF at ¶ 31.] On October 27, 2021, Dr. Thomas reported that a CT-scan showed a "minimally displaced lateral femoral condyle fracture involving the intercondylar notch." [DFOF at ¶ 32.] Dr. Thomas further observed that there "has been no further displacement of the fracture compared to [the] prior x-rays" that had been taken the week of the injury, and that the injury was "already beginning to heal." [*Id*. at ¶ 33.] Dr. Thomas advised Plaintiff to continue with her "current course of nonoperative management." [*Id*. at ¶ 34.]

Plaintiff used a wheelchair until December 2021 when she transitioned to using a walker with wheels. [*Id*. at ¶ 35.] On January 21, 2022, Dr. Thomas found the fracture was healing, and recommended Plaintiff progress to weight bearing tolerance and "[s]lowly wean out of knee brace." [*Id*. at ¶ 36.] Plaintiff's physical therapist likewise concluded, in a note dated January 21, 2022, that Plaintiff had "made significant improvement in functional abilities and range of motion. There is also decreasing pain." [*Id*. at ¶ 37.] By March 18, 2022, Dr. Thomas examined Plaintiff again and found "[s]he is ambulating with full weight bearing on the right lower extremity." [*Id*. at ¶ 38.] Plaintiff had weaned off the knee brace by that time. [*Id*. at ¶ 39.] In April 2022, Dr. Thomas reported that Plaintiff had been weightbearing to tolerance and that the pain in her knee was improving. [*Id*. at ¶ 40.] In April 2022, Dr. Thomas found that Plaintiff "may return to work on sedentary duty." [PM at 2 (¶ 7), 9 (¶ 6); DFOF at ¶ 41.]

Dr. Thomas reported on April 17, 2022 that Plaintiff's "pain is improving in the right knee. Physical therapy is helping. Arc of motion of the right knee is from 0 to 110 degrees. She ambulates with a cane. She is demonstrating steady improvement." [DFOF at ¶ 42.] Plaintiff reported to her physical therapist on May 6, 2022, that she was "doing well and having less pain overall," and felt she was "getting stronger." [*Id*. at ¶ 43.] The physical therapist also reported that Plaintiff's range of motion was improving. [*Id*. at ¶ 44.] On June 28, 2022, Dr. Thomas observed that Plaintiff continued to have paresthesia of the right thigh and likely posttraumatic arthritis in her right knee, and that Plaintiff may experience "some intermittent discomfort" throughout her life. [*Id*. at ¶ 45.] On June 28, 2022, Dr. Thomas confirmed that her work status remained the same as in April when he found that she could return to sedentary work. [*Id*. at ¶ 46.]

On July 21, 2022, Plaintiff visited a spine specialist and surgeon, Dr. Robert Owen, for "back pain and radiating right lower extremity pain." [PM at 5 (¶ 17), 10 (¶ 10); DFOF at ¶ 47.] Dr. Owen recommended a treatment plan that included physical therapy, exercises, an oral course

of steroids, and a prescription medication for neuromodulation. [DFOF at ¶ 48.] In September 2022, Dr. Thomas examined Plaintiff and found her symptoms "relatively unchanged despite continued attempts and conservative management." [*Id*. at ¶ 49.] Dr. Thomas found Plaintiff was showing signs of lumbar radiculopathy and ordered an epidural steroid injection. [*Id*. at ¶ 50.]

Approximately one month after the epidural injection, Dr. Thomas reported that the fracture Plaintiff sustained on the date of her injury had "healed," and that Plaintiff was "currently on light duty." [PM at 10 ( ¶ 11); DFOF at ¶ 51.] At that time, Plaintiff was walking with assistance of a cane, mainly to help with gait imbalance. [DFOF at ¶ 52.] In her right knee, the examination revealed Plaintiff was experiencing "some discomfort, but is doing well overall" and that the epidural injection had helped. [*Id*. at ¶ 53.] During a follow up appointment in November 2022, Dr. Owen observed that Plaintiff's "back is feeling substantially better." [*Id*. at ¶ 54.] Plaintiff was getting "no neurologic symptoms into the lower extremities," and no numbness, tingling weakness or radiating pain." [*Id*. at ¶ 55.] Plaintiff was "able to continue with most regular activities that she continues to recover from her known knee injury." [*Id*. at ¶ 56.] Plaintiff's remaining back pain was mild and "she feels pretty much back to her baseline and feels ready to move forward." [*Id*. at ¶ 57.] Plaintiff reported no new complaints at that time, and the assessment described her radiculopathy as "fully resolved," with no related signs or symptoms. [*Id*. at ¶ 58.]

Dr. Thomas, Dr. Owen, and a third treating physician, Dr. Scott Pennington, all completed a Physician's Medical Statement as part of the Fund's disability process. [*Id*. at ¶ 59.] On the Physician's Medical Statement form, a physician may check a box stating that they find the patient "[t]o be totally and permanently disabled." None of the three treating physicians checked that box. [*Id*. at ¶ 60.] On his Physician's Medical Statement, Dr. Thomas designated that Plaintiff had been "[c]apable of engaging in light or sedentary work" since April 15, 2022. [*Id*. at ¶ 61.] That work status remained unchanged over the following months. [*Id*. at ¶ 63.] In July 2022, Dr. Owen

likewise released Plaintiff to light duty, with restrictions on repetitive bending, twisting, and lifting more than 10 pounds. [*Id*. at ¶ 64.] In September 2022, Dr. Thomas again continued Plaintiff on light-duty restrictions, including frequent positional changes, a 5-pound lifting limit, and no squatting, climbing, bending, or prolonged walking. [PM at 3 (¶ 9), 6 (¶ 22); DFOF at ¶ 65.]

It appears that sometime in April of 2023, a Functional Capacity Evaluation ("FCE") may have been ordered for Plaintiff but was never performed. [PM at 10 (¶ 15); DCOL at ¶ 13.]

Plaintiff applied for a Disability Pension Application from the Fund on August 14, 2023. [PM at 3 (¶ 13), 6 (¶ 27); DFOF at ¶ 18.] Based on the information appearing in the administrative record, in April 2024, the Fund denied plaintiff's Disability Pension application, explaining that her medical records reflected that she was not eligible for a Disability Pension. [DFOF at ¶ 21.] As the Fund explained in its denial letter, Dr. Thomas's statements that Plaintiff was capable of light or sedentary work supported the conclusion that Plaintiff "did not terminate Covered Employment…under the Plan due to a Total and Permanent Disability." [DCOL at ¶ 25.]

## III. Analysis[3]

Plaintiff applied for a Disability Pension under Article IV, Section 4.05(a) of the Plan, which is available only to participants whose employment terminates due to "Total and Permanent Disability." Plaintiff alleges that from the date of her injury until her retirement on January 25, 2023, Kroger could not provide her with a job that met her restrictions. But the Plan's disability standard does not ask whether Plaintiff could return to the same position or whether her employer had a suitable opening. It asks whether Plaintiff was *unable* to engage in *any* substantial gainful activity because of a qualifying impairment. It matters not whether Plaintiff actually did engage in any substantial gainful activity, as Plaintiff seems to imply. [*See* PM at 12 (¶ f).]

[3] Within this Analysis Section, the Court does not cite to any Material Facts using pinpoint citations as the Court has laid them all out with pinpoint citations in the Material Facts Section, *supra*.

Plaintiff's medical records (which she does not dispute) do not reflect a "physical or mental impairment" that would be expected to result in death or to last for a period of 12 months or more, which is the definition of "Totally and Permanently Disabled" under the Plan. In short, Plaintiff injured herself on September 24, 2021, sustaining a "Displayed Fracture of Lateral Condyle of RT Femur, initial encounter for closed fracture S72.421A." She was put in a full-length leg cast and wheelchair. On October 27, 2021, Dr. Thomas reported, in part, that Plaintiff's injury was "already beginning to heal." Plaintiff's condition steadily improved in the months following the incident. Plaintiff used a wheelchair until December 2021 when she transitioned to using a walker with wheels. On January 21, 2022, Dr. Thomas found the fracture was healing, and recommended Plaintiff progress to weight bearing tolerance and "[s]lowly wean out of knee brace." Plaintiff's physical therapist likewise concluded Plaintiff had "made significant improvement in functional abilities and range of motion [with] decreasing pain." By March 18, 2022, Plaintiff had weaned off the knee brace and was "ambulating with full weight bearing on the right lower extremity." In April 2022, Dr. Thomas reported that Plaintiff had been weightbearing to tolerance, the pain in her knee was improving, and she "may return to work on sedentary duty." At that time, she was ambulating with a cane and "demonstrating steady improvement." Again, on June 28, 2022, Dr. Thomas confirmed that her work status was the same as it had been in April, when he found that Plaintiff could return to sedentary work.

In September 2022, Dr. Thomas ordered an epidural steroid injection for Plaintiff's back pain. In November 2022, approximately one month after the epidural injection, Dr. Thomas reported that the fracture Plaintiff sustained on the date of her injury had "healed," and that Plaintiff was "currently on light duty." At that time, Plaintiff was walking with assistance of a cane, mainly to help with gait imbalance. Examination revealed Plaintiff was experiencing "some discomfort, but is doing well overall" with respect to her right knee, and she also reported the epidural injection

had helped. During a follow up appointment in November 2022, spine specialist Dr. Robert Owen observed that Plaintiff's "back is feeling substantially better" with "no neurologic symptoms into the lower extremities," and no numbness, tingling weakness or radiating pain." She was "able to continue with most regular activities that she continues to recover from her known knee injury." Key at this time was Dr. Owen's November 2022 report stating that Plaintiff's remaining back pain was mild and that "she feels pretty much back to her baseline and feels ready to move forward." In fact, the assessment described her radiculopathy as "fully resolved," with no related signs or symptoms.

Three of Plaintiff's treating doctors completed a Physician's Medical Statement as part of the Fund's disability process, and none found Plaintiff "[t]o be totally and permanently disabled." Rather, these records demonstrate progressive healing, conservative treatment, improvement in function, and return-to-work releases within months of the injury. By April 2022, Dr. Thomas had released Plaintiff to sedentary work, and later records reflected further improvement. Many months later, Dr. Thomas confirmed that Plaintiff had been "[c]apable of engaging in light or sedentary work" since April 15, 2022.

The administrative record therefore does not show that Plaintiff suffered the kind of medically determinable impairment required to qualify for a Disability Pension under Section 4.05(a) of the Plan. Plaintiff's injury did not prevent her from engaging in substantial gainful activity, as required under the Plan. The Plan defines "substantial gainful activity" broadly and expressly provides that work may still be substantial even if it is part-time or less responsible or gainful than prior work. Plaintiff's light-duty restrictions, including frequent positional changes, a 5-pound lifting limit, and no squatting, climbing, bending, or prolonged walking do not establish inability to engage in substantial gainful activity under the Plan. To the contrary, Plaintiff's ability to perform sedentary or light work defeats her claim that she was unable to engage in any

substantial gainful activity as both sedentary and light work still qualify as substantial gainful activity under the Plan. Moreover, the Plan expressly recognizes that work may remain substantial even if it is part-time, less demanding, or less gainful than the participant's prior work.

Under de novo review, the Court must make an independent determination whether Plaintiff proved entitlement to benefits under the terms of the Plan. *Dorris,* 949 F.3d at 304. The record shows both that Plaintiff's injury improved with treatment and that her treating physicians repeatedly released her to sedentary or light work. Because the record does not establish a qualifying impairment that prevented Plaintiff from engaging in *any* substantial gainful activity, Plaintiff has not met her burden.

Plaintiff's inability to return to her former position is *not* the relevant inquiry here. Plaintiff does not identify any evidence of record contradicting her physicians' repeated assessments that she was able to work. Although the record reflects that a Functional Capacity Evaluation ("FCE") may have been ordered and not performed, this does not change the treating physicians' work releases or the other medical records reflecting improvement.[4] This case turns on whether Plaintiff satisfies the definition of "Totally and Permanently Disabled," under the *Plan*, and not whether she might qualify as disabled under a different statutory or regulatory framework, such as the Social Security Administration guidelines (as Plaintiff has cited to numerous times in her brief, *see*, *e.g.*, PM at 2-3 (¶ 7); 3 (¶ 10); 6 (¶¶ 21, 23); 9 (¶ 7); 10 (¶ 12); 12 (¶ C)).

In sum, Plaintiff's treating physicians repeatedly concluded she could return to work subject to restrictions. As the Fund explained in its denial letter to Plaintiff, Dr. Thomas's

[4] Additionally, the Court notes there is no evidence in the record to support Plaintiff's characterization that she was improperly "penalized" for not undergoing an FCE. [*See* PM at 10 (¶ 16).] Moreover, any alleged procedural violations are immaterial to the Court's review at this stage of the process. Courts have recognized that *de novo* review does not provide a separate and distinct remedy for alleged violations of ERISA procedure. *See Walsh v. Long Term Disability Coverage for All Emps. Located in the United States of DeVry, Inc.,* 601 F. Supp. 2d 1035, 1043 (N.D. Ill. 2009) (rejecting the contention that procedural violations entitled the claimant to reinstatement of benefits under *de novo* review and concluding that *de novo* review "does not provide a separate and distinct remedy for violations of ERISA procedure").

statements that Plaintiff was capable of light or sedentary work supported the conclusion that Plaintiff "did not terminate Covered Employment…under the Plan due to a Total and Permanent Disability." [DFOF at ¶ 25.] Under the facts of record, the Court cannot disagree. While the Plan limits disability benefits to participants who are unable to engage in any substantial gainful activity, the record here shows Plaintiff could perform *at least* sedentary or light work, which does not satisfy the Plan's definition of disability. Plaintiff has not established she was entitled to a Disability Pension under The Plan.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Findings of Fact and Conclusions of Law Pursuant to Federal Rule of Civil Procedure 52(a) [Dkt. 63] is DENIED; Defendant's Motion for Judgment on the Administrative Record Pursuant to Federal Rule of Civil Procedure 52. [Dkt. 65] is GRANTED. Judgement shall enter in favor of Defendant UFCW International Union-Industry Variable Annuity Pension Fund and against Barbara A. Bogdan. This civil case is terminated.

**ENTERED: August 17, 2026**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge